UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
NEWARK DIVISION

| | |
|---|---|
| **IVAN OJEDA, individually and on behalf of all others similarly situated,** | |
| **Plaintiff,** | **CIV. A. NO.** |
| **vs.** | **JURY TRIAL DEMANDED** |
| **KALLBERG INDUSTRIES, LLC,** | |
| **Defendant.** | **CLASS/COLLECTIVE ACTION** |
| | **PURSUANT TO 29 U.S.C. § 216(b)/ FED. R. CIV. P. 23** |

## PLAINTIFF'S COLLECTIVE ACTION AND CLASS ACTION COMPLAINT

### I.    SUMMARY

1.    Ivan Ojeda (Ojeda) brings this lawsuit to recover unpaid overtime wages and other damages from Kallberg Industries, LLC (Kallberg) under the provisions of section 216(b) of the Fair Labor Standards Act of 1938 (the "FLSA"), as amended 29 U.S.C. §§ 201, et seq., the Puerto Rico Wage Payment Statute (the "PRWPS"), 29 L.P.R.A. §§ 171, et seq., §§ 250, et seq., and §§ 271, et seq.

2.    Ojeda and those similarly situated regularly worked for Kallberg in excess of 40 hours each week. As shown below, Kallberg failed to properly compensate Ojeda and all other similarly situated workers.  When these workers were paid a day rate, they were not paid overtime.  When they were paid hourly, Kallberg failed to properly calculate their rate of pay, by failing to include all remuneration received, thereby depriving them of the appropriate rate of overtime pay.  Kallberg also

improperly classified Ojeda and those similarly situated as independent contractors. This action seeks to recover the unpaid overtime wages and other damages owed to these workers.

## II. JURISDICTION AND VENUE

3.      This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

4.      Venue is proper in the U.S. District Court Southern District of Florida, Fort Lauderdale Division pursuant to 28 U.S.C. § 1391(b).

5.      The Court has federal jurisdiction over this action pursuant to the jurisdictional provisions of the Class Action Fairness Act, 28 U.S.C. § 1332(d). The Court also has supplemental jurisdiction over any state law sub-class pursuant to 28 U.S.C. § 1367.

6.      Kallberg maintains its headquarters in this Broward County in the U.S. District Court Southern District of Florida, Fort Lauderdale Division.

## III. PARTIES

### A.  Ivan Ojeda

7.      Plaintiff Ojeda is a resident of Puerto Rico. His written consent is on file with the Court.

8.      Ojeda worked for Louis Berger through Kallberg and Kennett. He was a diesel mechanic for Kennett and Kallberg from January of 2018 until September of 2018 in Puerto Rico. He would perform service and maintenance on industrial generators.

9.      Ojeda normally worked 12 hours a day seven days a week, but he was not paid overtime for hours worked over 40 in a workweek.

10.     Initially, Ojeda was paid a day rate of $225 regardless of the number of hours he worked. He was later switched to hourly pay with overtime.

11.    When he was paid hourly, his "fringe" pay was not included in his regular rate. Ojeda's paychecks did not include all remuneration into calculating the overtime that he should have received.

**B. Opt-In Plaintiffs**

12.    The following Plaintiffs who have opted into this matter were also employed by Kallberg:

Ivan J. Ojeda

Jesse Velazquez Rivera

Juan L Rodriguez

Albert Torres

Leose Rodriguez

Miguel Villegas

Luis Figueroa

Gabriel T Prada

Javier Colon

Edgard Medina-Cruz

Brian Castro

Jose Armstrong

Carlos R.  Abreu

Miguel Isaac-Alicea

Edgardo Gonzalez-Colon

Gabriel Martinez-Lopez

Nelson  Morales

Hector Rivera

Manuel A Lopez

Richard Vargas

Bernie Castellanos-Rodriguez

Francisco Guzman-Bartolomei

Eduardo Hernandez

Christopher L Perez

Rafael Cortes

Gabriel E. Fernandez-Torres

Anibal Lopez-Medina

Christian Benitez-Toledo

Jonathan Sepulveda

Josue Rios-Rivera

Victor Fuentes-Fernandez

Jorge Rosa

Victor Alers

Jose M. Garcia-Cortes

Edgar Roman Lopez

Diego Salcedo Morales

Roberto O Ruiz

Roberto Rafols

Alejandro Moreda

Juan  C. Gelabert

Angel Andujar

Jose De La Cruz

Elvis A. Martinez

William Dorta

Kemuel Barreto-Castillo

Leniel J. Soto

Bernardo Martinez-Paredes

Efrain Colon-Santana

Gabriel A. Velez- Lambrix

Lino Corretjer

Xavier Ramos-Rodriguez

Joseph Velez-Lambrix

Reinaldo Roman

Francisco J. Augusto-Domenech

Xavier Juarbe-Vargas

Rafael Cruz

Eliezer Alvarez-Serrano

Jose A Vargas

Angelo Acevedo

Christian Nieves-Calero

Harold Gonzalez

Jose E Rafols

Juan Castro

Edwin Torrado-Torres

Karlos J Perez-Valle

Juan  C Gerena

Ruben Aponte

Alexander Ruiz- Garcia

Vicente Gonzalez-Deliz

Luis A. Ramos-Rodriguez

Eric Rivera

Jose A. Antongiorgi

Josue Perez-Carrero

Israel Velazquez-Rios

Javier Rodriguez-Mercado

Rolando Arroyo-Bracero

Elveen Samalot- Lopez

Ernesto Gonzalez

Raymond Torres-Roman

Alberto Cruz- Rodriguez

Ian M Cahill-Serrano

Samuel Ramos

Joel Martinez

Miguel  Diaz

Iran L. Adames

Jason P. Berrios

Osmar J.  Badillo-Maisonave

Jensen Riopedre

Rafael Alvarez-Vargas

Johnny Ortiz-Rivera

Emilio J. Rosario-Morales

Alexander  Rosario

Alejandro Martinez

Jason Roman Pagan

Wigberto Torres Rivera

Anibal Rosario-Batista

David Arocho-Castro

Jonathan Alvarez

William Garcia-Caldero

Daniel Alvarez

Hector Cardona

Wayne Cedeno

Alexander Pagan

Manuel Velez

Luis Feliciano

Luis M Rivera- Figueroa

Federico Ruiz-Torres

Jose A. Lugo

Rafael Alomar-Colon

Nelson Reyes-Pineiro

Hector I Rodriguez-Ramos

Jose A. Martinez La Santa

German De Ornellas-Hau

Darien Rivera Rodriguez

Gamaliel Rodriguez-Claudio

Luis A Rivera-Rodriguez

Jeffrey Gleason-Lopez

Ramon  E Santiago-Torres

Tomas Carino

Giancarlo Cardona

Juan  Arroyo-Diaz

Xavier  Ponce

Juan M Camacho-Rodriguez

Jose Manuel Rodriguez-Cruz

Javier  Bonilla-Rios

Leonardo Mantilla

Jose Machado

Hauger Martin

Wilfredo Figueroa

Raul Gonzalez-Tosado

Kelvin Ruiz-Maldonado

Rancel Portes

Thomas Bursian

Ivan Burgos-Torres

Jaime J Rubio

Jose Carreras-Diaz

Roberto Lopez

Wilfredo Betancourt

Alexandra Sanz

Jaime Munoz

Joshua Schultz

Wray Rigual

Gabriel Santos-De Leon

Louis Vega

Enrique Sanchez-Rodriguez

Kyle Donaldson-Irizarry

Luis Centeno-Guzman

Daniel Perez-Nieves

Eric X Perez-Rodriguez

Edwin Rivera-Serrano

Dana A Graydon

Carlos Martinez

Hector Rivera-Gonzales

Jhon Sarmiento

David  Gonzalez-Benjan

Omar A. Santiago-Vega

Davon Elie-Hiraldo

Jason Pagan-Castellano

Gabriel  Torres-Marquez

Miguel F Serrano-Negron

Justin  Mullins

Jose A. Verdiales-Gonzalez

Inocencio Rios

William Magnuson

Ramon Vazquez

Edwin Rivera-Vega

Virgilio Nunez-Rodriguez

Bernardo R.  Martinez-Guevara

Rafael Benet-Ayala

Luis I. Rivera-Santos

Alexander Bermudez

Erich Dehmel-Rivera

Anthony Colon-Morales

Michael  J. Mercer

Cody Mercer

Luis E. Soto-Ruiz

Alberto J Santiago-Roda

Jose M Garcia

Orlando Bello-Vazquez

John Barber

Billy Carpenter

Edgar Jiminez-Montanez

Kenneth Burrows

Michael Williams

James Carter

David Guerry

Cesar Benitez

Angel Marquez-Cadiz

13.     The Opt-in Plaintiffs worked through Kallberg for Louis Berger in Puerto Rico.

14.     Like Ojeda, the Opt-in Plaintiffs were paid a day rate without overtime compensation.

15.     Like Ojeda, the Opt-in Plaintiffs provided relief work after the hurricanes.

16.     The Opt-in Plaintiffs customarily worked 12 or more hours a day, and consistently worked over 60 hours a week. They were not paid overtime for hours worked over 40 in a workweek.

**C.  Ojeda represents multiple proposed classes under the FLSA and Rule 23**

17. Ojeda brings this action on behalf of multiple classes. First, Ojeda brings this action individually and on behalf of all other similarly situated workers who were classified as independent contractors and paid by Kallberg's day-rate system. Kallberg paid each of these workers a flat amount for each day worked and failed to pay them overtime for all hours that they worked in excess of 40 hours in a workweek. The class of similarly situated employees or potential class members sought to be certified is defined as follows (the "Day Rate Class"):

**All workers employed by or on behalf of Kallberg and any subsidiaries, alter egos, or co-employers who were classified as independent contractors and paid a day-rate while staffed to Louis Berger.**

18.    Plaintiff Ojeda also brings this action individually and on behalf of all other similarly situated workers who were classified as independent contractors and paid by Kallberg as hourly employees, whose overtime rate was improperly calculated. The class of similarly situated employees or potential class members sought to be certified is defined as follows (the "Hourly Class"):

**All workers employed by or on behalf of Kallberg and any subsidiaries, alter egos, or co-employers who were classified as independent contractors and received an hourly rate plus fringe payments while staffed to Louis Berger.**

19.    The Day Rate Class and the Hourly Class are collectively the "Putative Class Members."

20.    Ojeda further seeks class certification pursuant to FED. R. CIV. P. 23 under Puerto Rico Law (the "Puerto Rico Class").

21.    Ojeda brings this action on behalf of themselves and on behalf of the Puerto Rico Class:

**All workers employed by or on behalf of Kallberg and any subsidiaries, alter egos, or co-employers who were classified as independent contractors and paid a day-rate or received an hourly rate plus fringe payments in Puerto Rico while staffed to Louis Berger.**

22.    Defendant Kallberg Industries, LLC is a Florida limited liability company. It has made a special appearance in this case.

23.    Kallberg and Louis Berger worked together in concert to employ the Putative Class Members in Puerto Rico.

24.    A Wage & Hour investigation was conducted regarding Louis Berger and the other Kallberg's pay practices.

25.    The Case ID is 1841216.

26.    Louis Berger agreed to pay more than $5,000,000.00 in back wages for it and the

subcontractors identified above.

27.        One of these subcontractors was Kallberg.

28.        The pay practices found to be overtime violations are the same pay practices which Ojeda and the Putative Class Members were subjected to and are at issue in this lawsuit.

### IV. COVERAGE UNDER THE FLSA

29.        At all times hereinafter mentioned, Kallberg has been an employer within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

30.        At all times hereinafter mentioned, Kallberg has been part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

31.        At all times hereinafter mentioned, Kallberg has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce - such as relief work equipment, hand tools, computers, automobiles, and cell phones – by any person and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated).

32.        At all times hereinafter mentioned, Ojeda and the Putative Class Members were engaged in commerce or in the production of goods for commerce.

33.        At all times hereinafter mentioned, Kallberg has been an employer within the meaning of 29 L.P.R.A. § 250b and 24 V.I.C. § 1 et seq.

34.        As will be shown through this litigation, Kallberg treated Ojeda, and indeed all of their hurricane relief workers that were classified as independent contractors or employees and paid a daily rate without overtime compensation or whose overtime rate was miscalculated.

35.    Kallberg's misclassification of Ojeda and the Putative Class Members as independent contractors does not alter their status as employers for purposes of this FLSA collective or class action.

## V.    FACTS

36.    Following the massive devastation caused by Hurricane Irma and Hurricane Maria, FEMA and other state and federal governmental departments, such as the Department of the Army implemented programs to provide aid and repairs to Puerto Rico and the Virgin Islands.

37.    As of November 1, 2018, FEMA alone awarded more than $4 billion for public assistance programs.[1]

38.    As part of these efforts, Louis Berger was awarded multiple contracts for power generation and repair. It deployed "more than 300 staff and independent contractors on the ground in support of the Federal Emergency Management Agency (FEMA), U.S. Army Corps of Engineers (USACE), U.S. Postal Service (USPS) and Defense Logistics Agency (DLA) missions to bring much needed manpower, equipment and supplies" to residents of Puerto Rico[2] and the Virgin Islands.

39.    Louis Berger was the prime contractor and subcontracted this work through Kallberg and other subcontractors. Upon information and belief, Louis Berger and Kallberg shared supervision and control of Ojeda and the Putative Class Members' work schedules, determined their rate and method of payment, and jointly maintained employment records for work performed under the governmental programs. These entities jointly provided delivery, repairs, and service and maintenance on generators for use in Puerto Rico and the Virgin Islands.

40.    To implement this work, the Kallberg hired workers such as Ojeda to perform skilled and manual labor to provide handyman, laborer, or mechanic services.

41.    For this work, Ojeda and the Putative Class Members were misclassified as

---

[1] https://www.fema.gov/news-release/2018/11/01/fema-public-assistance-funding-tops-4-billion-puerto-rico
[2] https://www.louisberger.com/news/relief-bound-puerto-rico-and-virgin-islands

independent contractors. While exact job titles and job duties may differ, these workers are subjected to the same or similar illegal pay practices for similar work.

42.      For the Day Rate Class, Kallberg classified all of these workers as independent contractors and paid them a flat sum for each day worked, regardless of the number of hours that they worked that day (or in that workweek) and failed to provide them with overtime pay for hours that they worked in excess of 40 hours in a workweek.

43.      For the Hourly Class, Kallberg improperly excluded certain payments it called "fringe" payments from the regular rate of pay, and as a result Ojeda and the Hourly Class members were not paid overtime at the proper overtime rate required by federal law.

44.      Kallberg's pay practices violate the FLSA and Puerto Rico wage laws.

45.      Ojeda and the Putative Class Members generally provided labor, transportation, and/or mechanical services in connection with restoration of power in Puerto Rico after the hurricanes, including installing, maintaining, servicing, and fueling generators. Initially, some were paid a day rate by Kallberg, but were then switched to hourly pay, paid him an overtime rate, as well as some "fringe" pay. Even though in certain instances the overtime rate was 1.5 times the regular hourly rate; it did not incorporate the fringe pay and as a result the overtime rate was improper.

46.      Ojeda and the Putative Class Members had no power to hire or fire other workers. All aspects of their work were controlled by Kallberg and Louis Berger. Kallberg and Louis Berger retained the authority to hire and fire, they issued pay, supervised, controlled, and directed Ojeda and the Putative Class Members, and they controlled all aspects of Ojeda and the Putative Class Members' job activities.

47.      Kallberg and Louis Berger set Ojeda and the Putative Class Members' rates of pay and work schedule and prohibited them from working other jobs for other companies while they were working on jobs for Kallberg. Kallberg and Louis Berger directly determined Ojeda and the Putative

Class Members' opportunity for profit and loss. Ojeda and the Putative Class Members' earning opportunity was based on the number of days Kallberg scheduled them to work.

48.      Kallberg and Louis Berger ordered the hours and locations Ojeda and the Putative Class Members worked, tools used, and rates of pay received.

49.      Ojeda and the Putative Class Members were economically dependent on Kallberg and Louis Berger during their employment.

50.      Ojeda and the Putative Class Members did not incur operating expenses like rent, payroll, marketing, and insurance.

51.      No real investment was required of Ojeda or the members of the Putative Class to perform their jobs; they did not bring building supplies, tools, or equipment to the island. These items were provided by Kallberg and Louis Berger or its clients.

52.      The job functions of Ojeda and the members of the Putative Class were primarily manual labor/technical in nature, requiring little to no official training, much less a college education or other advanced degree.

53.      The members of the Putative Classes did not have any supervisory or management duties. Finally, for the purposes of their overtime claims, the members of the Putative Class performed substantially similar job duties related to repair work and maintenance on generators for use in Puerto Rico's recovery efforts.

54.      Ojeda performed routine transportation, manual, and technical labor duties that were largely dictated by Kallberg and Louis Berger and/or their clients.

55.      All of the members of the Putative Classes performed the same or similar job duties and are subjected to the same or similar policies and procedures, which dictate the day-to-day activities performed by each person.

56.      The members of the Putative Class also worked similar hours and were denied

overtime as a result of the same illegal pay practice. They all worked in excess of 40 hours each week and were often scheduled for 12 hour shifts for weeks at a time. Instead of paying them overtime, Kallberg paid the members of the Putative Classes a day-rate or an inappropriate overtime rate and misclassified them as independent contractors.

57.     Kallberg's policy of failing to properly pay its independent contractors, including Ojeda, violates the FLSA because these workers are, for all purposes, employees performing non-exempt job duties.

58.     Because Ojeda and the Putative Class Members were misclassified as independent contractors by Kallberg and/or paid the incorrect overtime rate, they should receive the correct amount of overtime for all hours that they worked in excess of 40 hours in each workweek.

59.     Kallberg's day-rate system and fringe pay practices violate the FLSA because Ojeda and the Putative Class Members did not receive the correct amount of pay for hours worked over 40 hours each week.

## VI.     FLSA VIOLATIONS

60.     As set forth herein, Kallberg has violated, and are violating, Section 7 of the FLSA, 29 U.S.C. § 207, by employing employees in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA for workweeks longer than 40 hours without compensating such employees for their employment in excess of 40 hours per week at rates no less than 1 and ½ times the regular rates for which they were employed.

61.     Kallberg knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay the Putative Class Members overtime compensation. Kallberg's failure to pay overtime compensation to these employees was neither reasonable, nor was the decision not to pay overtime made in good faith.

62.     Accordingly, Ojeda and the Putative Class Members are entitled to overtime wages, plus liquidated damages, attorney's fees and costs.

## VII. PUERTO RICO VIOLATIONS

63.     Ojeda brings this claim under Puerto Rico law as a Rule 23 class action.

64.     Puerto Rico law requires employers like Kallberg to pay employees at one and one-half (1.5) times the regular rate of pay for hours worked in excess of forty (40) hours in any one week. Kallberg was subject to Puerto Rico Law and Ojeda and the Puerto Rico Class Members are entitled to overtime pay under this law. P.R. Laws Ann. tit. 29 § 271 et seq ("Law 379").

65.     Kallberg has violated Puerto Rico law by failing to compensate their employees for hours worked in excess of 40 hours per week at rates less than 1 and ½ times the regular rates for which they were employed.

66.     Puerto Rico Code 29 L.P.R.A. § 171, et seq., limits the deductions that can be taken from a worker's wages.  Kallberg made illegal deductions from the wages of Ojeda and the Putative Class Members.  These deductions were not authorized and were done willfully.

67.     Puerto Rico Code 29 L.P.R.A. § 173 requires employers to pay their employees for all hours worked, at intervals not to exceed 15 days. If employee is dismissed from work, he must be paid no later than the next official payday. Kallberg regularly and willfully failed to properly pay Ojeda and the Putative Class Members and failed to do so in the time required. Puerto Rico Code provides that employers who violate the provisions of this act are liable to affected employees for unpaid wages, liquidated damages of an amount equal to the amount owed, costs, attorney's fees, and other appropriate relief. 29 L.P.R.A. § 177.

68.     Puerto Rico Code 29 L.P.R.A. § 185a, et seq., applies to protect workers from wrongful discharge.  Any employee who is terminated without just cause is entitled to mandatory severance under Puerto Rico law.  "Just cause for discharge of an employee shall be understood to be that which

is not based on legally prohibited reasons and on a whim of the employer." 29 L.P.R.A. § 185b. Kallberg willfully violated these statutes when Ojeda or the Putative Class Members were terminated without just cause and not paid the required severance.

69.    Puerto Rico Code 29 L.P.R.A. § 250 et seq., mirrors the federal requirements for minimum wage.  On several occasions, Kallberg failed to pay members of the class for hours worked. These class members regularly performed manual labor for 10 and 12 hour periods per day but were underpaid or not paid for altogether for this work.  Kallberg willfully violated these sections by failing to pay Ojeda and the Putative Class Members for all hours worked.

70.    Puerto Rico Code 29 L.P.R.A. § 271, et seq., mandates that regular working hours for non-exempt employees are eight (8) hours per day, and forty (40) hours per week.  All hours worked in excess of eight hours in any work day or forty hours in a week must be compensated as overtime.  29 L.P.R.A. § 273(a), §274.  Kallberg willfully violated these sections by failing to properly compensate Ojeda and the Putative Class Members for all hours actually worked in excess of eight per day or forty per week.  Ojeda and the Putative Class Members regularly worked in excess of 12 hours per day, 6-7 days per week.

71.    Puerto Rico Code 29 L.P.R.A. § 283 regulates the meal periods granted to workers. All non-exempt employees are entitled to 1 hour for a meal, to be taken between the third and sixth consecutive hours of work. An "employer who requires or allows an employee to work for a period longer than five (5) consecutive hours, without providing a meal period, must pay the employee an extraordinary compensation for the time worked" at a rate of one and a half times the regular rate of pay. *Id.*  Kallberg willfully violated this section by requiring or failing to allow Ojeda and the Putative Class Members their regular meal periods.

72.    Puerto Rico Code 29 L.P.R.A. § 501, et seq., requires employers to pay workers who have worked a certain number of hours a bonus (commonly called a "Christmas Bonus").  This

bonus is provided in addition to any other wages or benefits of any other kind to which an employee is entitled. *Id.* Kallberg employed the requisite number of workers, but willfully failed to pay a bonus to those Putative Class Members who qualified.

73.    As a result of Kallberg's willful violations of the applicable Puerto Rico Labor Laws, Ojeda and the Putative Class Members are entitled to recover their respective unpaid compensation, liquidated damages (double damages), as provided for by the Puerto Rico Labor Law, attorneys' fees and costs, pre- and post- judgment interest, and such other legal and equitable relief as this Court deems just and proper.

74.    Accordingly, Ojeda and the Puerto Rico Class Members are entitled to overtime wages under Puerto Rico law in an amount equal to 1 and ½ times their rate of pay, plus liquidated damages, attorney's fees and costs.

### VIII.    CLASS AND COLLECTIVE ACTION ALLEGATIONS

75.    Ojeda incorporate all previous paragraphs and alleges that the illegal pay practices Kallberg imposed on Ojeda were likewise imposed on the Putative Class Members.

76.    Numerous individuals were victimized by this pattern, practice, and policy which is in willful violation of the FLSA and Puerto Rico law.

77.    Numerous other individuals who worked with Ojeda indicated they were improperly classified as independent contractors, paid in the same manner, performed similar work, and were not properly compensated for all hours worked as required by state and federal wage laws.

78.    Based on their experiences and tenure with Kallberg, Ojeda is aware that Kallberg's illegal practices were imposed on the Putative Class Members. At this time, dozens employees of Kallberg have opted in to this litigation.

79.    The members of the Day Rate Class were all improperly classified as independent contractors and not afforded the overtime compensation when they worked in excess of 40 per week.

80.     The members of the Hourly Class were all improperly classified as independent contractors and not paid the correct rate for their hours worked in excess of 40 per week.

81.     Kallberg's failure to pay appropriate wages and overtime compensation at the rates required by federal law result from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Putative Class Members.

82.     Ojeda's experiences are therefore typical of the experiences of the Putative Class Members.

83.     The specific job titles or precise job locations of the various members of the Putative Class Members do not prevent class or collective treatment.

84.     Ojeda has no interests contrary to, or in conflict with, the Putative Class Members. Like each member of the Putative Class, Ojeda has an interest in obtaining the unpaid overtime wages owed under federal law.

85.     A class and collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

86.     Absent this action, many members of the Putative Class likely will not obtain redress of their injuries and Kallberg will reap the unjust benefits of violating the FLSA and Puerto Rico law.

87.     Furthermore, even if some of the members of the Classes could afford individual litigation against Kallberg, it would be unduly burdensome to the judicial system.

88.     Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the classes and provide for judicial consistency.

89.     The questions of law and fact common to each of the Putative Class Members predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

a) Whether Kallberg employed the members of the Classes within the meaning of the FLSA or state law;

b) Whether the members of the Classes were improperly misclassified as independent contractors;

c) Whether Kallberg's decision to classify the members of the Classes as independent contractors was made in good faith;

d) Whether Kallberg's decision to not pay the correct amount for overtime to the members of the Classes was made in good faith;

e) Whether Kallberg's violation of the FLSA was willful; and

f) Whether Kallberg's illegal pay practices were applied uniformly to all members of the Classes.

90.    Ojeda's claims are typical of the claims of the Putative Class Members. Ojeda and the Putative Class Members sustained damages arising out of Kallberg's illegal and uniform employment policy.

91.    Ojeda knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class or collective action.

92.    Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude collective action treatment.

## IX.    JURY DEMAND

93.    Ojeda demands a trial by jury.

## X.    RELIEF SOUGHT

94.    WHEREFORE, Ojeda prays for judgment against Kallberg as follows:

a.   For an Order designating the Day Rate Class as a collective action and permitting the issuance of a notice pursuant to 29 U.S.C. § 216(b) to all similarly situated individuals with instructions to permit them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

b.   For an Order designating the Hourly Class as a collective action and permitting the issuance of a notice pursuant to 29 U.S.C. § 216(b) to all similarly situated individuals with instructions to permit them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

c.   For an Order pursuant to Section 16(b) of the FLSA finding Kallberg liable for unpaid back wages due to Ojeda and the Putative Classes for liquidated damages equal in amount to their unpaid compensation;

d.   For an Order designating the state law classes as class actions pursuant to Fed. R. Civ. P. 23;

e.   For an Order appointing Ojeda and his counsel as Class Counsel to represent the interests of the both the federal and Puerto Rico Class;

f.   For an Order awarding attorneys' fees, costs and pre- and post-judgment interest; and

g.   For an Order granting such other and further relief as may be necessary and appropriate.

Dated:      New York, New York
            April 26, 2021


                            Respectfully submitted,


                            /s/ Dana Cimera
                            Dana M. Cimera
                            **FITAPELLI & SCHAFFER, LLP**
                            Dana M. Cimera
                            28 Liberty Street, 30th Floor
                            New York, NY 10005
                            Telephone: (212) 300-0375

                            Michael A. Josephson
                            Texas Bar No. 24014780
                            Richard M. Schreiber
                            State Bar No. 24056278
                            Andrew Dunlap
                            Texas Bar No. 24078444
                            **JOSEPHSON DUNLAP, LLP**
                            11 Greenway Plaza, Suite 3050
                            Houston, Texas 77046
                            713-352-1100 – Telephone
                            713-352-3300 – Facsimile
                            mjosephson@mybackwages.com
                            adunlap@mybackwages.com
                            rschreiber@mybackwages.com

                            **AND**


                            Richard J. (Rex) Burch
                            Texas Bar No. 24001807
                            **BRUCKNER BURCH, PLLC**
                            8 Greenway Plaza, Suite 1500
                            Houston, Texas 77046
                            Telephone:      (713) 877-8788
                            Telecopier:     (713) 877-8065
                            rburch@brucknerburch.com

**CERTIFICATE OF SERVICE**

I served a copy of this document on all counsel of record via the Court's ECF system and the Federal Rules of Civil Procedure on April 26, 2021.


*/s/ Dana Cimera*
Dana Cimera